# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WFTV, INC.,**

**Plaintiff,**

**-vs-**                                    **Case No.  6:11-cv-1923-Orl-28KRS**

**MAVERIK PRODUCTION LIMITED
LIABILITY COMPANY, JONATHAN
ALDRIDGE,**

**Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 30)** |
| **FILED:** | **January 23, 2013** |

## I.      PROCEDURAL HISTORY.

Plaintiff, WFTV, Inc. ("WFTV"), filed a complaint against Defendants, Maverik

Production Limited Liability Company ("Maverik") and Jonathan Aldridge ("Aldridge"), on

December 1, 2011, alleging trademark infringement and false designation of origin in violation of

the Lanham Act, 15 U.S.C. §§ 1114 *et seq.*; cybersquatting in violation of the Anticybersquatting

Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); Florida common law trademark

infringement; and deceptive and unfair trade practices in violation of section 501.204 of the

Florida Statutes, all in connection with WFTV's trademarks for its "Inside Central Florida"

website.  Doc. No. 1.  WFTV later amended its complaint, asserting the same causes of action.

Doc. No. 13.   Service of both the original complaint and the amended complaint was

accomplished via substitute service through the Secretary of State for the State of Florida on

March 28, 2012.  Doc. No. 16-5; Doc. No. 30 at 2 n. 1.  Defendants failed to respond, and the

clerk entered defaults against them on July 20, 2012.  Doc. Nos. 19 and 20.

On August 28, 2012, WFTV filed a motion for default judgment against Defendants.   Doc.

No. 21.  I denied that motion without prejudice and instructed WFTV to address certain

deficiencies in any renewed motion.  Doc. No. 28.  In particular, I instructed WFTV to clarify

whether it was abandoning any of the causes of action stated in the amended complaint.  I also

instructed WFTV to provide in a renewed motion the elements of each cause of action on which it

sought default judgment and show with pinpoint citations to the amended complaint that the well-

pleaded facts in the amended complaint established each element.  *Id.*

On January 23, 2013, WFTV filed its renewed motion for default judgment.  Doc. No. 30.

The motion seeks a judgment for $40,847.25, which represents $20,000 in statutory damages,

$19,358.75[1] in attorneys' fees, and $1,407.50 in costs.  It also seeks a permanent injunction

prohibiting Defendants from, among other things, continuing to use the infringing trademarks,

ordering Defendants to destroy materials bearing the infringing trademarks, and transferring the

---

[1]The text of WFTV's motion states that it is seeking $19,439.75 in attorneys' fees.  Doc. No. 30 at 20-21.
However, the affidavit submitted in support of WFTV's motion (Doc. No. 22) and its proposed final default judgment
order (Doc. No. 34) both state that the attorneys' fees at issue total $19,358.75.  Accordingly, I assume that
$19,358.75 is the correct figure.

www.insidecentralfloridashow.com domain name to WFTV.  Doc. No. 30-1.  In support of its

motion, WFTV refers to a declaration from WFTV's General Manager, Shawn Bartelt, which was

originally submitted in support of its first motion for default judgment.  Doc. No. 23.  It also refers

to a declaration from one of its attorneys, James B. Lake, setting forth the basis of its claim for

attorneys' fees and costs.  This declaration was also originally submitted in support of WFTV's

first motion for default judgment.  Doc. No. 22.  Finally, in support of its motion, WFTV

submitted a declaration of Karen Lee Grubb, who is a paralegal at the law firm representing

WFTV.  Doc. No. 31.  Grubb's declaration provides information regarding the ownership of the

www.insidecentralfloridashow.com domain name, as requested by the Court.  *Id.*  WFTV served

Defendants with the motion, but Defendants failed to timely respond.

On March 13, 2013, I held a hearing on WFTV's motion for default judgment to address

several potential deficiencies with WFTV's motion and proposed order of permanent injunction.

Defendants were notified of the hearing and their right to attend.  Doc. No. 32.  They did not

appear for the hearing.  During the hearing, I gave WFTV permission to file an updated proposed

permanent injunction order that would address the issues discussed at the hearing, as well as an

updated declaration from Ms. Grubb regarding the ownership of the

www.insidecentralfloridashow.com domain name.  Following the hearing, WFTV submitted an

updated proposed order of default judgment (not an updated proposed permanent injunction order,

as I had given it permission to file) and declaration from Ms. Grubb.  Doc. Nos. 34-35.

On March 29, 2013, Defendant Aldridge filed an untimely response to WFTV's renewed

motion for default judgment.  Doc. No. 37.  On the same day, Aldridge filed a notice of address

change, stating that he travels regularly and oftentimes does not have immediate access to his

mail.  Doc. No. 36.  Aldridge's response is untimely, but I consider it in making my Report and Recommendation in light of Aldridge's representation that he travels frequently and sometimes does not have immediate access to his mail.  Aldridge's response is described in more detail, below, but I note at the outset that he has not asked the Court to set aside the default entered against him and, regardless, has not provided any good reason for doing so.  Moreover, Aldridge has not come forward with any arguments or admissible evidence addressing the arguments made in WFTV's renewed motion for default judgment.

Accordingly, WFTV's motion for default judgment is now ripe for ruling.

## II.     FACTS ALLEGED IN THE AMENDED COMPLAINT.[2]

WFTV is a Delaware corporation that owns and operates an Orlando-based television station.  Doc. No. 13 ¶ 6.  Since approximately 1997, it has operated a website that shares news, weather, and other information of interest to persons in Orange County and other areas of Central Florida.  *Id.* ¶ 13.   That website is known as INSIDE CENTRAL FLORIDA and IC FLORIDA. *Id.*  ¶¶ 2, 13.  The website's home page is available at www.insidecentralflorida.com and www.icflorida.com.  *Id.* ¶ 3.  WFTV has owned those domain names since at least as early as 1997.  *Id.*  Since its inception, the INSIDE CENTRAL FLORIDA website has become a valuable resource for persons seeking information online about Central Florida.  *Id.* ¶ 14.

WFTV uses the marks INSIDE CENTRAL FLORIDA®, ICFLORIDA.COM®, and IC FLORIDA (collectively, the "IC Florida Marks") in connection with this website.  *Id.* ¶ 13. WFTV has invested a significant amount of time and money in advertising and developing the IC

---

[2]I do not include in this section additional facts set forth in WFTV's memorandum and evidence in support of its motion for a default judgment because only the facts set forth in the amended complaint are deemed to be admitted by Defendants.

Florida Marks.  *Id.* ¶ 15.  The marks have been promoted in radio advertising, on billboards, and on television.  *Id.*  As a result of these advertising and marketing efforts, the IC Florida Marks have become trademarks that are recognized by the general public.  *Id.* ¶ 16.  The IC Florida Marks are associated with WFTV's online news service.  *Id.* ¶ 36.

The mark INSIDE CENTRAL FLORIDA® is registered with the U.S. Patent and Trademark Office ("USPTO").  *Id.* ¶ 17.  The mark was issued by the USPTO on June 6, 2000 and was most recently renewed in 2010.  *Id.*  It is valid, in effect, and incontestable.  *Id.*  The mark ICFLORIDA.COM® is also registered with the USPTO.  The mark was issued by the USPTO on September 11, 2007, and is still valid and in effect.  *Id.* ¶ 18.

Maverik is a Florida limited liability company with its principal office in Kissimmee.  *Id.* ¶ 7.  Aldridge is Maverik's registered agent and managing member.  *Id.* ¶ 8.  He resides in Florida. *Id.*  Years after WFTV launched the INSIDE CENTRAL FLORIDA website, Maverik and Aldridge began marketing and displaying on the internet a video news program called "Inside Central Florida Show."  *Id.* ¶¶ 19, 43.  Aldridge also purchased the domain name www.insidecentralfloridashow.com.  *Id.* ¶ 19.  Episodes of the "Inside Central Florida Show" are available online via the  www.insidecentralfloridashow.com domain name.  *Id.*[3]  Maverik and Aldridge have marketed the "Inside Central Florida Show" to one or more television stations in Central Florida.  *Id.* ¶ 4.[4]

---

[3]Aldridge's response admits that he uses  www.insidecentralfloridashow.com in commerce.  Doc. No. 37 at 1. He notes that he has "forwarded" www.insidecentralfloridashow.com to maverikproductions.com "to avoid any confusion," *id.*, but does not refute WFTV's allegations that his "Inside Central Florida Show" video program has been and is accessible on the internet via the www.insidecentralfloridashow.com domain name.

[4]Aldridge confirmed this allegation with his response to WFTV's motion by attaching various emails showing his negotiations with WFTV and WRDQ to air the "Inside Central Florida Show."  Doc. No. 37-1 at 7-15.

Neither Maverik, Aldridge, www.insidecentralfloridashow.com, nor the online video program available on the website are affiliated with, sponsored by, or approved of by WFTV. *Id.* ¶ 20. Prior to the filing of this lawsuit, WFTV objected to Defendants' use of the name "Inside Central Florida Show." *Id.* ¶ 21. Thereafter, and despite WFTV's objection, Defendants knowingly, intentionally, and willfully continued to use the name "Inside Central Florida Show" to identify their online program. *Id.* ¶ 22. Rather than ceasing infringement, after learning of WFTV's objection, Aldridge offered to sell the www.insidecentralfloridashow.com domain to WFTV for $2.2 million. *Id.* ¶ 23.[5] Currently, Defendants are using the name "Inside Central Florida Show" without WFTV's permission. *Id.* ¶ 30.[6]

Defendants knew of WFTV's website, www.insidecentralflorida.com, when they selected the name "Inside Central Florida Show" for their program. *Id.* ¶ 26. They selected the name "Inside Central Florida Show" for their program after the registration for the INSIDE CENTRAL FLORIDA® mark became effective on June 6, 2000. *Id.* ¶ 27. Aldridge knew of the domain

---

[5]Aldridge confirmed this allegation with his response to WFTV's renewed motion by attaching a letter he sent to WFTV's counsel, James B. Lake, in which he offered to sell the www.insidecentralfloridashow.com domain name to WFTV for $2.2 million. Doc. No. 37-1 at 2.

[6]Aldridge claims in his response that WFTV has granted permission to air the "Inside Central Florida Show" on its television network, Doc. No. 37 at 1-2, and attaches several emails purporting to show that written permission was granted, Doc. No. 37-1 at 7-15. As mentioned above, Aldridge has not asked the Court to set aside the clerk's default entered against him and has not provided any cause for so doing. Because the clerk's default has not been set aside, he cannot avoid his admission of this allegation. Moreover, Aldridge's claims are not properly before the Court because his response is not verified and the attached emails are not properly authenticated. In addition, the emails do not show that WFTV granted Aldridge or Maverik permission to air the "Inside Central Florida Show." Rather, they show that Aldridge and Maverik were engaged in negotiations with WFTV and WRDQ to allow the "Inside Central Florida Show" to be aired, not that WFTV ever entered into a contract with Aldridge or gave him permission to air the "Inside Central Florida Show" on its network. Moreover, they do not show that WFTV approved of the "Inside Central Florida Show" being offered on the internet via the www.insidecentralfloridashow.com domain name or, indeed, that WFTV approved of Aldridge and Maverik's use of the www.insidecentralfloridashow.com domain name. By any measure, then, WFTV's allegations that neither Maverik, Aldridge, their website, or their video program are approved of by WFTV and that Defendants are using the name "Inside Central Florida Show" without WFTV's permission stand as unrefuted.

-6-

name www.insidecentralflorida.com when he purchased the www.insidecentralfloridashow.com

domain name.  *Id.* ¶ 28.  Defendants selected the name "Inside Central Florida Show" for their

program with the intention of trading upon the goodwill WFTV has established in the IC Florida

Marks.  *Id.* ¶ 29.  They are using the name "Inside Central Florida Show" to confuse the public

into believing that their program is connected to WFTV or otherwise associated with WFTV's

popular website, www.insidecentralflorida.com.  *Id.* ¶ 24.  By using the name "Inside Central

Florida Show" for an online video news program, Defendants are marketing and selling a product

or service similar to WFTV's online news service under a mark confusingly similar to the IC

Florida Marks without WFTV's approval.  *Id.* ¶ 43.

 The INSIDE CENTRAL FLORIDA® mark and the name "Inside Central Florida Show"

convey substantially the same commercial impression.  Doc. No. 13 ¶ 32.  The

ICFLORIDA.COM® mark and the name "Inside Central Florida Show" convey substantially the

same commercial impression.  *Id.* ¶ 33.  The ICFLORIDA.COM® mark and

www.insidecentralfloridashow.com are confusingly similar.  *Id.* ¶ 35.

 Because of the similarity between the name "Inside Central Florida Show" and the IC

Florida Marks, consumers and others are likely to associate Defendants' "Inside Central Florida

Show" program with WFTV or to believe that the program is actually a product or service of

WFTV, thereby causing confusion, mistake, or deception as to the source or origin of Defendants'

product and service.  *Id.* ¶¶ 25, 31.  Defendants' use of "Inside Central Florida Show" and the

www.insidecentralfloridashow.com domain name in connection with the sale, distribution, or

advertising of their news program is likely to cause confusion or mistake for consumers, or to

deceive as to the source of origin of Defendants' goods or services.  *Id.* ¶ 45.  Defendants' conduct

is causing and will continue to cause confusion among members of the relevant consuming public. *Id.* ¶ 46.  Because of the likely confusion as to the source of Defendants' product or service, WFTV's goodwill in the IC Florida Marks has been damaged.  *Id.* ¶ 37.  Moreover, by using a name or mark confusingly similar to the IC Florida Marks, Defendants are continuing to subject WFTV's reputation and goodwill to irreparable injury and harm.  *Id.* ¶ 39.  Defendants' conduct was undertaken intentionally, willfully, and with wanton disregard for WFTV's rights.  *Id.* ¶ 38.

## III.    APPLICABLE LAW.

In general, a court may enter a default judgment when the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[7] Thus, to support an entry of default judgment "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

---

[7]In *Bonner v.  City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit held that decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, are binding precedent in the Eleventh Circuit.

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default.  Rather, the Court determines the amount and character of damages to be awarded."  *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).  If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages.  Fed. R. Civ. P. 55(b)(2).  *See also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).  However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages.  *Id.*

## IV.    ANALYSIS.

### A.    Liability.

A default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit.  Fed. R. Civ. P. 55(a).  Defendants failed to participate in this case, despite the fact that they were provided with notice of it on March 28, 2012.  Doc. No. 16-5.  Therefore, so long as WFTV's factual allegations support each element of its claims, a default judgment is appropriate.  I discuss each of WFTV's claims separately, below.

#### 1.    Count I: Trademark Infringement in Violation of the Lanham Act.

WFTV claims that Defendants violated 15 U.S.C. § 1114(1)(a) by infringing on their federally registered trademarks, INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM® (referred to collectively as WFTV's "Federally Registered Marks").  Doc. No. 13 ¶¶ 41-47.[8]  To prevail on a claim of trademark infringement, WFTV must establish that: (1) it possesses a valid

---

[8]WFTV's Amended Complaint does not assert that Defendants violated § 1114(1)(a) by infringing on its unregistered trademark, IC FLORIDA, nor could it have done so, as § 1114(1)(a) applies only to registered marks.

mark; (2) Defendants used the mark or a colorable imitation of the mark; (3) Defendants' use of the mark occurred "in commerce"; (4) Defendants used the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services"; and (5) Defendants used the mark in a manner likely to confuse consumers.  15 U.S.C. § 1114(1)(a); s*ee also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).  After five (5) years of continuous use, the Lanham Act allows the owner of a registered trademark to obtain "incontestable" status.  Once a registration has achieved incontestable status, that status is treated as conclusive evidence of the registrant's right to use the trademark, subject to enumerated defenses.  15 U.S.C. §§ 1065, 1115(b); s*ee also Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1208 (11th Cir. 1999).  Even if a registered trademark has not yet achieved incontestable status, a certificate of registration of the mark on the USPTO's principal register constitutes prima facie evidence of its validity.  15 U.S.C. § 1057(b); *see also Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F.Supp.2d 1262, 1269 (M.D. Fla. 2010) (citations omitted).

By failing to answer the amended complaint, Defendants admit that WFTV registered the INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM® marks.  Doc. No. 13 ¶¶ 17-18.  They also admit that the INSIDE CENTRAL FLORIDA® mark has obtained incontestable status by being in use continuously for five (5) years or more.  *Id.* ¶ 17.  This is sufficient to establish the first element of trademark infringement, that WFTV possesses valid marks.

Also by failing to answer the amended complaint, Defendants admit that they used the "Inside Central Florida Show" name and the www.insidecentralfloridashow.com domain by marketing and displaying a video news program available on the internet.  *Id. ¶¶* 19, 43.  They

also admit that they marketed the "Inside Central Florida Show" to one or more television stations

in Central Florida.  *Id.* ¶ 4.  This is sufficient to establish  the third and fourth elements of

trademark infringement, that Defendants used "Inside Central Florida Show" and

[www.insidecentralfloridashow.com](www.insidecentralfloridashow.com) in commerce in connection with the sale, offering for sale,

distribution, or advertising of any goods or services.  *See Planetary Motion, Inc. v. Techsplosion,*

*Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001) (citing *Planned Parenthood Fed'n of Am., Inc. v.*

*Bucci*, No. 97 Civ 0269 (KMW), 1997 WL 133313 (S.D. N.Y. 1997)); *Chanel, Inc. v. Mesadieu*,

No. 6:08-cv-1557-Orl-31KRS, 2009 WL 2496586, at *4 (M.D. Fla. Aug. 12, 2009).

  For the second element of trademark infringement, the term "colorable imitation" includes

"any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to

deceive."  15 U.S.C. § 1127.  Thus, the second element of trademark infringement overlaps with

the last element – likelihood of confusion.  For the last element of trademark infringement,

> "[s]even factors are relevant when determining whether a likelihood of confusion
> exists: (1) the strength of the plaintiff's mark; (2) the similarity between the
> plaintiff's mark and the allegedly infringing mark; (3) the similarity between the
> products and services offered by the plaintiff and defendant; (4) the similarity of
> the sales methods; (5) the similarity of advertising methods; (6) the defendant's
> intent, e.g., does the defendant hope to gain competitive advantage by associating
> his product with the plaintiff's established mark; and (7) actual confusion."

*Axiom Worldwide*, 522 F.3d at 1220.  With respect to the first factor, a mark that has attained

incontestable status is relatively strong.  *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192

F.3d 1330, 1336 (11th Cir. 1999) (citing *Wilhelm Pudenz GmbH*, 177 F.3d at 1208); *Dieter v.*

*B&H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989)).  With respect to the seventh

factor, actual confusion is the best evidence of a likelihood of confusion.  *Frehling*, 192 F.3d at

1340 (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir. 1983)).

By failing to answer the complaint, Defendants admit that the INSIDE CENTRAL FLORIDA® mark has achieved incontestable status and, thus, that it is relatively strong. Doc. No. 13 ¶ 17.

With their default, Defendants also admit that the "Inside Central Florida Show" name and www.insidecentralfloridashow.com domain name convey substantially the same commercial impression as WFTV's Federally Registered Marks and that the ICFLORIDA.COM® mark is confusingly similar to the www.insidecentralfloridashow.com domain name. *Id.* ¶¶ 32-33, 35. They also admit that the products or services involved are the same or similar – namely, provision of news via the internet.[9] *Id.* ¶¶ 19, 43. Defendants further admit that they chose the "Inside Central Florida Show" name for their program because they hoped to trade on the goodwill WFTV had already established in its Federally Registered Marks. *Id.* ¶ 29. In addition, they admit that they are infringing on WFTV's Federally Registered Marks intentionally, willfully, and with wanton disregard of WFTV's rights. *Id.* ¶ 38. Finally, Defendants admit that consumers have actually been confused by their use of the "Inside Central Florida Show" name and the www.insidecentralfloridashow.com domain name. *Id.* ¶ 46.[10]

---

[9]WFTV's amended complaint contains a link to Defendants' "Inside Central Florida Show" website. Doc. No. 13 ¶ 19. A copy of that website is also attached to the declaration of Shawn Bartelt. Doc. 23-2. In his response, Aldridge argues that WFTV's website is not similar to the "Inside Central Florida Show" because the "Inside Central Florida Show" is a television program. Doc. No. 37 at 1. His response does not, however, refute the allegation that he and Maverik have made this "television program" available via the internet.

[10]In his response, Aldridge argues that he "forwarded" www.insidecentralfloridashow.com to maverikproductions.com "to avoid any confusion." Doc. No. 37 at 1. This argument does not refute WFTV's claim that consumers have actually been confused by the use of the "Inside Central Florida Show" name or the www.insidecentralfloridashow.com domain name.

Taken together, Defendants' admissions are sufficient to establish the likelihood of confusion and, thus, the second and fifth elements of trademark infringement. *See Chanel*, 2009 WL 2496586, at *4-5.

Because all five (5) elements of trademark infringement have been established, Defendants are liable for trademark infringement under 15 U.S.C. § 1114(1)(a).

        2.        Count III: Cybersquatting in Violation of the ACPA.

WFTV also claims that Aldridge engaged in cybersquatting, in violation of the ACPA, 15 U.S.C. § 1125(d).[11]  Cybersquatting "'occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder.'" *Sound Surgical Techs.*, 734 F. Supp. 2d at 1275 (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 205 (6th Cir. 2004)).  To establish a claim under the ACPA, WFTV must establish: (1) it has a valid trademark entitled to protection; (2) its marks are distinctive or famous; (3) Aldridge's domain name is identical or confusingly similar to the owner's mark; and (4) Aldridge used, registered, or trafficked in the domain name (5) with a bad faith intent to profit.  *Id.*  Registration of a trademark establishes a rebuttable presumption that it is distinctive.  *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n. 3 (11th Cir. 2007) (citing 15 U.S.C. § 1057(b)) ("Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.'"*).*

---

[11]  WFTV's original motion for default judgment sought default judgment against both Maverik and Aldridge for cybersquatting.  Doc. No. 21 at 11-13.  With its renewed motion for default judgment, WFTV withdrew that request as to Maverik, recognizing that the ACPA would not allow for Maverik to be found liable for violating the ACPA based on the facts alleged in the amended complaint.  Doc. No. 30 at 1, 10.

As explained above, by his default Aldridge has admitted that WFTV's INSIDE

CENTRAL FLORIDA® mark is valid and entitled to protection.  By his default, Aldridge has

admitted that the INSIDE CENTRAL FLORIDA® mark is distinctive or famous.  Doc. No. 13 ¶¶

17-18, 59.  Aldridge has admitted that the www.insidecentralfloridashow.com domain name is

confusingly similar to WFTV's INSIDE CENTRAL FLORIDA® mark.  *Id.* at ¶ 60; *see also*

discussion of likelihood of confusion, *supra* section IV(A)(1).  He has also admitted that he

trafficked in the www.insidecentralfloridashow.com domain name by offering to sell it to WFTV

for $2.2 million.  *Id.* ¶ 23.  *See Sound Surgical Techs.*, 734 F. Supp. 2d at 1277 (citing *Ford Motor*

*Co. v. Catalanotte*, 342 F.3d 543, 549 (6th Cir. 2003)) (defendant trafficked in domain name when

he offered to sell it to plaintiff).  Accordingly, WFTV has established the first four (4) elements of

its cybersquatting claim.

With respect to the fifth element, the ACPA lays out nine (9) non-exclusive factors that the

Court may consider.  The consideration of these factors is permissive, not mandatory.  15 U.S.C. §

1125(d)(1)(B)(i); *Sound Surgical Techs.*, 734 F. Supp. 2d at 1276 (citations omitted).  The factors

are:

> (I)     the trademark or other intellectual property rights of the person, if any, in
>         the domain name;
>
> (II)    the extent to which the domain name consists of the legal name of the
>         person or a name that is otherwise commonly used to identify that person;
>
> (III)   the person's prior use, if any, of the domain name in connection with the
>         bona fide offering of goods or services;
>
> (IV)    the person's bona fide noncommercial or fair use of the mark in a site
>         accessible under the domain name;

(V)    the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)    the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)    the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)    the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of 15 U.S.C. § 1125.

15 U.S.C. § 1125(d)(1)(B)(i).  The ACPA also includes a safe harbor, whereby a "bad faith intent to profit" may not be found "in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).

There is nothing in the record that would support a finding that Aldridge believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.[12]

_____

[12]Aldridge's response does not provide a basis for the Court to conclude that he believed and had reasonable grounds to believe that the use of the www.insidecentralfloridashow.com domain name was a fair use or otherwise lawful, particularly in light of the allegations of the amended complaint that have been admitted by virtue of his default.

To the contrary, by his default, Aldridge has admitted that he had notice of WFTV's INSIDE CENTRAL FLORIDA® mark prior to his purchase of the www.insidecentralfloridashow.com domain name, that he chose the name "Inside Central Florida Show" for his program with the intention of trading upon the goodwill WFTV has established in its INSIDE CENTRAL FLORIDA® mark, and that he has been infringing on WFTV's INSIDE CENTRAL FLORIDA® mark intentionally, wilfully, and with wanton disregard for WFTV's rights.  Doc. No. 13 ¶¶ 27-29, 38, 44.  Therefore, the ACPA's safe harbor does not apply.

With respect to the factors set forth in 15 U.S.C. § 1125(d)(1)(B)(I), many of them weigh in favor of a finding that Aldridge had a bad faith intent to profit when he offered to sell WFTV the www.insidecentralfloridashow.com domain name for $2.2 million.  For example, the record does not reflect that Aldridge has any trademark or other intellectual property rights in the www.insidecentralfloridashow.com domain name.  In addition, the www.insidecentralfloridashow.com domain name does not consist of Aldridge's legal name or a name commonly used to identify Aldridge.  The record also does not reflect any bona fide noncommercial or fair use of WFTV's marks in a site accessible under the www.insidecentralfloridashow.com domain name.

"As to factor VI, a bad faith intent to profit from a domain name can arise either at the time of the registration or at any time" thereafter.  *Sound Surgical Techs.*, 734 F. Supp. 2d at 1277.  By his default, Aldridge has admitted that, prior to the filing of this lawsuit, WFTV objected to his use of the name "Inside Central Florida Show."  Doc. No. 13 ¶ 21.  He has also admitted that, after WFTV so objected, he offered to sell WFTV the www.insidecentralfloridashow.com domain name for $2.2 million and continued to use the domain name.  *Id.* ¶¶ 23-24.  The practice of holding a

domain name for ransom with an intent to profit from the selling the domain name to the mark

owner is the "'paradigmatic harm'" targeted by the ACPA.  *Sound Surgical Techs.*, 734 F. Supp.

2d at 1277 (quoting *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009)).

Although an offer to sell a domain name does not by itself evidence unlawful trafficking, an

exorbitant offer (that is, one far beyond any out-of-pocket costs associated with registering and

maintaining a domain name) by an individual who had no right to use a domain name in the only

way he had ever used it supports a finding of bad faith intent to profit.  *Id.* (citing *Virtual Works,*

*Inc. v. Volkswagen of Amer., Inc.*, 238 F.3d 264, 270 (4th Cir. 2001)).  Here, Aldridge's exorbitant

demand of $2.2 million for the www.insidecentralfloridashow.com domain name supports a

finding that he trafficked in the domain name with a bad faith intent to profit.  *Id.* (finding that

defendant trafficked in domain names with bad faith intent to profit where he demanded $200,000

for their transfer).

Taken together, I recommend that the Court find that the well-pleaded factual allegations

contained in WFTV's amended complaint – all of which have been admitted by Aldridge – are

sufficient to support a finding of liability under the ACPA.

        3.     <u>Counts II, IV, and V: False Designation of Origin in Violation of the
Lanham Act, Common Law Trademark Infringement, and State Law
Deceptive and Unfair Trade Practices</u>.

With Counts II, IV, and V, WFTV claims that, by using the "Inside Central Florida Show"

name and the www.insidecentralfloridashow.com domain, Defendants intentionally engaged in

conduct that constitutes false designation of origin in violation of 15 U.S.C. § 1125(a); common

law trademark infringement; and deceptive and unfair trade practices in violation of Florida

Statutes § 501.24.  Doc. No. 13 ¶¶ 48-55, 63-74.

In its renewed motion for default judgment, WFTV did not provide the elements of each of these causes of action and show how the well-pleaded allegations of the amended complaint established Defendants' liability for them.  Instead, it argued that: (1) facts establishing liability for federal trademark infringement pursuant to 15 U.S.C. § 1114(a)(1) result in liability under 15 U.S.C. § 1125(a) and liability for Florida common law trademark infringement (Doc. No. 30 at 8); and (2) engaging in trademark infringement is an unfair and deceptive trade practice in violation of Fla. Stat. § 501.24 (*Id.* at 12).  Thus, WFTV tied its argument in support of Counts II, IV, and V to its argument in support of Count I – which, in turn, addressed only federal trademark infringement of WFTV's Federally Registered Marks.

The problem with this mode of argument is that, as stated in the amended complaint, Counts II, IV, and V implicate both the federally registered marks and WFTV's unregistered mark, IC FLORIDA.  *See* Doc. No. 13 ¶¶ 48-55, 63-74 (referring to the "IC Florida Marks," which are defined by ¶ 13 to include both the Federally Registered Marks and the unregistered IC FLORIDA mark).  As mentioned above, the sole argument in support of Counts II, IV, and V was that Defendants' liability for Count I supported liability for Counts II, IV, and V.  WFTV did not discuss its unregistered mark when establishing Defendants' liability for Count I, except to make the conclusory statement that WFTV "owns common law trademark rights to the IC Florida Marks as well."  Doc. No. 30 at 8.[13]  Such a legal conclusion is not admitted by Defendants through their

_____

[13]  This statement cited to the equally conclusory Paragraph 51 of the amended complaint ("WFTV owns common law trademark rights to the IC Florida Marks.") and to the declaration of Shawn Bartelt (Doc. No. 23), which is not properly considered when determining liability on a motion for default judgment.  As conceded by WFTV's counsel at the March 13 hearing, determining that WFTV possesses common law trademark rights in the IC Florida Marks (including the unregistered IC Florida mark) requires consideration of a number of factors, none of which is explicitly addressed by WFTV's renewed motion for default judgment.

default and is insufficient to support a finding that Defendants infringed WFTV's unregistered IC

FLORIDA mark.  *See Nishimatsu*, 515 F.2d at 1206 ("The defendant is not held to admit facts that

are not well-pleaded or to admit conclusions of law.").  Because WFTV's renewed motion did not

establish federal trademark infringement with respect to the unregistered IC FLORIDA mark,

Counts II, IV, and V were unsupported insofar as those counts related to the unregistered IC

FLORIDA mark.

Due to this and other problems with WFTV's renewed motion for default judgment, I

scheduled a hearing.  In the Notice of Hearing, I asked WFTV's counsel to be prepared to address

"[h]ow the allegations of the Amended Complaint show that Plaintiff has acquired common law

trademark rights in the unregistered trademark IC FLORIDA."  Doc. No. 32 at 2.  During the

hearing, I asked WFTV's counsel a series of questions regarding this issue.  The ability of WFTV

to make the required showing of common law trademark rights based on the well-pleaded

allegations of the amended complaint was not immediately apparent.  However, in the course of

the discussion of this issue, WFTV's counsel represented that WFTV would not pursue its claims

as to the unregistered IC FLORIDA mark, so long as the injunctive relief granted by the Court was

broad enough to cover marks confusingly similar to the Federally Registered Marks, such as IC

FLORIDA.  I construed this statement as an abandonment of WFTV's claims on Counts II, IV,

and V, insofar as they implicate the unregistered IC FLORIDA mark.

Despite this apparent abandonment, WFTV submitted a proposed order of default

judgment that continues to seek an injunction prohibiting Defendants from using the "IC Florida

Marks," which are defined to include WFTV's Federally Registered Marks and the unregistered

IC FLORIDA mark.  Doc. No. 34 at 3, 6-8.[14]  Use of this blanket term suggests that WFTV has

not, in fact, abandoned its claims insofar as they implicate the unregistered IC FLORIDA mark –

although it is possible that use of this term is simply a scrivener's error.  Regardless of whether

WFTV has abandoned these claims, however, the fact remains that WFTV has not shown how the

well-pleaded allegations of the amended complaint establish Defendants' liability for Counts II,

IV, and V insofar as they relate to the unregistered IC FLORIDA mark.  In these circumstances,

the Court is not obliged to scour WFTV's filings to discern whether such liability could, in fact, be

established on the basis of the well-pleaded allegations of the amended complaint.  Accordingly, I

recommend that the Court deny WFTV's motion for default judgment with respect to Counts II,

IV, and V, insofar as they implicate the unregistered IC FLORIDA mark.[15]

Insofar as Counts II, IV, and V implicate WFTV's Federally Registered Marks, WFTV

correctly argues that the same set of facts that allows WFTV to prevail under 15 U.S.C. §

1115(a)(1) also results in recovery pursuant to 15 U.S.C. § 1125(a) and Florida Statutes § 501.24,

as well as recovery pursuant to a common law trademark infringement theory.  *Babbit  Elecs., Inc.*

*v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (citing *Marathon Mfg. Co. v. Enerlite*

*Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)); *TracFone Wireless, Inc. v. GSM Grp., Inc.*, 555

F. Supp. 2d 1331, 1338 (S.D. Fla. 2008) (citing *Laboratorios Roldan v. Tex Int'l, Inc.*, 902 F.

Supp. 1555, 1569-70 (S.D. Fla. 1995)); *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1270

(N.D. Fla. 2009) (citing *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F.

---

[14]Page references to this document are to the page numbers assigned when it was electronically filed, not to the internal pagination.

[15]The distinction at issue here, while slight, affects the terms of the injunctive relief to be granted, as discussed below.

Supp. 2d 1339, 1355-56 (S.D. Fla. 2001)).  Accordingly, insofar as Counts II, IV, and V relate to

WFTV's Federally Registered Marks, Defendants are liable for false designation of origin in

violation of 15 U.S.C. § 1125(a), common law trademark infringement, and deceptive and unfair

trade practices in violation of Florida Statutes § 501.24.

   *B.*  *Remedies.*

   WFTV seeks statutory damages, a permanent injunction, an order requiring Defendants to

destroy any infringing materials, and an order transferring the www.insidecentralfloridashow.com

domain name for Defendants' violations of the Lanham Act and the ACPA.  It also seeks an award

of attorneys' fees and costs.  I discuss each of these items separately, below.

    1.  <u>Statutory Damages</u>.

   WFTV seeks an award of statutory damages against Aldridge under the ACPA.  Doc. No.

30 at 17-18.  Under the ACPA, "the plaintiff may elect, at any time before final judgment is

rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory

damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as

the court considers just."  15 U.S.C. § 1117(d).  WFTV has elected statutory damages and requests

an award of $20,000 against Aldridge.  Doc. No. 30 at 17.

   In general, when a plaintiff requests statutory damages, the Court has "'wide discretion in

determining the amount of statutory damages to be awarded, constrained only by the specified

maxima and minima.'"  *B&F Sys., Inc.*, 2012 WL 2529191, at *7 (quoting *Columbia Pics.*

*Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)).

The statutory damages provision serves to sanction or punish defendants in order to deter future

wrongful conduct. *St. Luke's Cataract & Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1204-05 (11th Cir. 2009).

When entering default judgments, courts in this circuit have awarded statutory damages well in excess of the ACPA's $1,000 minimum. *See, e.g.*, *Petmed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004) ($50,000 for each of two infringing domain names, for a total of $100,000); *Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1359 (S.D. Fla. 2008) ($100,000 for single infringing domain name); *Transamerica Corp. v. Moniker Online Servs., LLC*, No. 09-60973-CIV, 2010 WL 1416979, at *4 (S.D. Fla. Apr. 7, 2010) ($100,000 for use of a single domain name where defendant also engaged in fraud and concealment); *K.S.R. X-Ray Supplies, Inc. v. Se. X-Ray, Inc.*, No. 09-81454-CIV, 2010 WL 4317026, at *7 (S.D. Fla. Oct. 25, 2010) ($10,000 for one infringing domain name where no evidence that wrongful conduct was ongoing); *Taverna Opa Trademark Corp. v. Ismail*, No. 08-20776-CIV, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) ($10,000 for single infringing domain name where use of website had been discontinued).

In the instant case, Aldridge has admitted to trafficking in the www.insidecentralfloridashow.com domain name with a bad faith intent to profit.  Doc. No. 13 ¶¶ 23, 61-62.  He has also admitted that he refused to cease using the domain name even after WFTV objected.  *Id.* ¶ 22.  He has also admitted that he is continuing to use the www.insidecentralfloridashow.com domain name.  *Id.*  In order to sanction and punish Aldridge and to deter future wrongful conduct, and in the absence of objection from Aldridge, I recommend that the Court find that WFTV's requested statutory damages of $20,000 are reasonable.

2.    Permanent Injunction.

a.    Whether a Permanent Injunction is Warranted.

WFTV also seeks injunctive relief against Defendants enjoining them from future infringing conduct.  The Lanham Act, 15 U.S.C. § 1116(a), provides, in relevant part, "The several courts vested with jurisdiction of civil actions arising under this chapter shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the [USPTO] or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."

A plaintiff seeking a permanent injunction must demonstrate that: (1) it suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for the injury; (3) considering the balance of the hardships between plaintiff and defendants, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  In *eBay*, the Supreme Court rejected a "general rule" that either presumed irreparable injury or categorically denied it in patent cases.  In *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d at 1228, the Eleventh Circuit declined to decide whether a presumption of irreparable injury in a trademark infringement case "is the equivalent of the categorical rules rejected by the [Supreme] Court in *eBay*."  Instead, it remanded the case to the district court to determine whether irreparable harm was shown without reliance on the presumption, among other things.  *Id.*  Accordingly, I examine the well-pleaded allegations of the amended complaint admitted by Defendants to determine whether irreparable harm has been shown without reliance on the presumption.

-23-

Defendants admit the following well-pleaded allegations of the amended complaint:

- WFTV has used the marks INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM® since 1997, when it launched a website called INSIDE CENTRAL FLORIDA.  Doc. No. 13 ¶ 13.

- WFTV has "invested a significant amount of time and money in advertising and developing" the INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM® marks.  *Id*. ¶ 15.

- "As a result of [WFTV's] extensive advertising and marketing efforts, the [INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM®] marks have come to be trademarks that are recognized by the general public."  *Id.* ¶ 16.

- Defendants "knowingly, intentionally, and willfully continue to use the name 'Inside Central Florida Show' to identify their online program despite WFTV's objection."  *Id.* ¶ 22.

- Defendants "are using the name 'Inside Central Florida Show' to confuse the public into believing that it is somehow connected to WFTV or otherwise associated with WFTV's popular [INSIDE CENTRAL FLORIDA] website."  *Id.* ¶ 24.

- Consumers and others are likely to associate Defendants' "Inside Central Florida Show" program with WFTV or to believe that Defendants' program is actually a product or service of WFTV.  *Id.* ¶¶ 25, 31.

- Defendants' use of the name "Inside Central Florida Show" and the www.insidecentralfloridashow.com domain name is causing and will continue to cause confusion among the members of the relevant consuming public.  *Id.* ¶ 46.

- "Because of the likely confusion as to the source of Defendants' products or services, WFTV's goodwill in its own marks has been damaged."  *Id.* ¶ 37.

- "By using a confusingly similar name or mark, Defendants are subjecting WFTV's reputation and goodwill to . . . injury and harm."  *Id.* ¶ 39.

- Defendants selected the name "Inside Central Florida Show" for their program "with the intention of trading upon the extensive goodwill that WFTV has established in the [INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM®] marks."  *Id.* ¶ 29.

- "Defendants' infringing and offensive conduct was undertaken intentionally, willfully, and with wanton disregard of WFTV's rights." *Id.* ¶ 38.

These facts establish that WFTV has developed goodwill among the consuming public which would be undermined if Defendants are not prohibited from advertising and offering a video news program called the "Inside Central Florida Show" and using the website domain name www.insidecentralfloridashow.com  (both of which are confusingly similar to WFTV's Federally Registered Marks), thereby creating a likelihood that the public would be confused about the origin of Defendants' products or services.  Further, as discussed above, Defendants willfully infringed on WFTV's Federally Registered Marks and continued to do so even after WFTV objected.  Indeed, rather than cease the infringing activities, Aldridge actually offered to sell WFTV the www.insidecentralfloridashow.com domain name for $2.2 million after being informed of the infringement.  Defendants' actual use of the "Inside Central Florida Show" name and the www.insidecentralfloridashow.com domain name, and the continued use of those names after WFTV's objection, demonstrate a likelihood that Defendants will continue to harm WFTV's trademarks if this Court declines to enter an injunction.  The immediate, ongoing violation of WFTV's right to exclude third parties from using its protected trademarks is not compensable through monetary remedies and is sufficient evidence of irreparable harm.  *See eBay*, 547 U.S. at 394-95 (Roberts, C.J., concurring); *Chanel*, 2009 WL 2496586, at *8.

With respect to the balance of hardships between WFTV and Defendants, the hardship to WFTV if Defendants' use of the "Inside Central Florida Show" name and the www.insidecentralfloridashow.com domain name for its video news program is not enjoined has been discussed above.  The only harm to Defendants as a result of an injunction would be their

preclusion from using names that infringe on WFTV's Federally Registered Marks.  In this circumstance, the balance of the hardships on the parties favors issuance of the injunction.  *See Chanel*, 2009 WL 2496586, at \*8.

An injunction would also service the public interest by protecting consumers from being misled and confused as to the source of Defendants' unauthorized video news program and website bearing names that are confusingly similar to WFTV's Federally Registered Marks.  *See BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) ("In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount.").

Because these factors favor the entry of a permanent injunction, I recommend that the Court grant WFTV's request for issuance of a permanent injunction.

> b.      *Terms of WFTV's Proposed Permanent Injunction Order.*

WFTV has submitted a proposed order of default judgment, which includes proposed permanent injunction language.  Doc. No. 34.   I recommend that the Court reject some of its terms.  Specifically, Paragraphs 1(a), (b), (c), (e), (f), and (g) of WFTV's proposed permanent injunction language purport to prohibit various activities that would infringe on its rights in the "IC Florida Marks," which are, as explained above, defined to include both the two federally registered trademarks at issue in this case (INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM®) and WFTV's unregistered IC FLORIDA mark.  Doc. No. 34 at 3, 5-6.  Such terms are appropriate pursuant to 18 U.S.C. § 1116(a), but only to the extent they prevent infringement of the INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM® marks.  As explained above, I recommend that the Court deny WFTV's motion for default judgment insofar

as it implicates the unregistered IC FLORIDA mark. Accordingly, I recommend that the Court reject WFTV's proposed injunction to the extent it would explicitly prohibit Defendants from infringing on WFTV's unregistered IC FLORIDA mark or using marks, names, words, etc. that are confusingly similar to WFTV's unregistered IC FLORIDA mark.[16]  This deficiency in WFTV's proposed injunction language can be remedied by substituting "INSIDE CENTRAL FLORIDA® or ICFLORIDA.COM®" wherever "an IC Florida Mark" or "any IC Florida Mark" appears.

The remainder of the terms of WFTV's proposed permanent injunction order – including the prohibition on registering or otherwise using the domain name www.insidecentralfloridashow.com – appear to be within the allowable bounds of 15 U.S.C. § 1116(a) and, accordingly, within the Court's discretion to adopt if it sees fit to do so.

  3. <u>Destruction of Materials</u>.

The Lanham Act, 15 U.S.C. § 1118, provides that, whenever a violation of 15 U.S.C. § 1125(a) has been established, "the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant bearing . . . the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof . . . shall be delivered up and destroyed."  Pursuant to this section, WFTV asks the Court to order

---

[16]Of course, it may be that, as WFTV's counsel suggested at the hearing on the renewed motion for default judgment, any injunction prohibiting Defendants from using marks or names that are "confusingly similar" to the Federally Registered Marks will encompass a prohibition on Defendants using "IC FLORIDA."  That issue is not, however, currently before the Court, and, given WFTV's failure to establish Defendants' liability for Counts II, IV, and V insofar as they relate to the unregistered IC FLORIDA mark, I cannot recommend that the Court explicitly enjoin Defendants from using that mark or any marks, names, words, etc. that are confusingly similar to that mark.

Defendants to "recall and deliver up and destroy, at their expense, all videos, stationery, business forms, signs, advertisements, brochures, promotional materials and other written materials bearing the infringing name or any name or mark confusingly similar to any IC Florida Mark."  Doc. No. 34 at 7.  As discussed above, WFTV's use of the defined term "IC Florida Mark" is problematic.  However, to the extent WFTV seeks an order requiring Defendants to deliver up and destroy all videos, stationery, business forms, signs, advertisements, brochures, promotional materials and other written materials bearing the "Inside Central Florida Show" name, the www.insidecentralfloridashow.com domain name, or any name or mark confusingly similar to WFTV's federally registered trademarks (INSIDE CENTRAL FLORIDA® and ICFLORIDA.COM®), I recommend that the Court grant WFTV's request pursuant to 15 U.S.C. § 1118.

> 4.      Transfer of Domain Name.

The Lanham Act, 15 U.S.C. § 1125(d)(1)(C), provides the following regarding cybersquatting cases: "In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(C).  Pursuant to this section, WFTV also asks that the Court order "Aldridge and his domain registrar, Network Solutions, Inc., or any other registrar acting on his behalf, [to] transfer the insidecentralfloridashow.com domain to WFTV."  Doc. No. 34 at 7.  In support of its request, WFTV has submitted a declaration from a paralegal for the firm representing WFTV, Karen Lee Grubb.  Doc. No. 35.  Ms. Grubb avers that she has attached a true and correct copy of registration information for the www.insidecentralfloridashow.com domain to her declaration.  *Id.* ¶ 4.  The

exhibit to Ms. Grubb's declaration is, in turn, a copy of a "WHOIS" search from

www.networksolutions.com.  The search shows that the registrant, administrative contact, and

technical contact for www.insidecentralfloridashow.com is Jonathan Aldridge and that the

registration expires on January 2, 2014.  *Id.* at 5.[17]  The exhibit also shows that the current

registrar is Network Solutions, LLC.  *Id.*  Based on this evidence, I recommend that the Court

grant WFTV's request for an order requiring Aldridge and Network Solutions to transfer the

www.insidecentralfloridashow.com domain name to WFTV pursuant to 15 U.S.C. §

1125(d)(1)(C).

          5.     Attorneys' Fees.

      WFTV seeks an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).  Section 1117(a)

provides, in relevant part, "When a violation of any right of the registrant of a mark registered in

the [USPTO], a violation under Section 1125(a) or (d) of this title, or a willful violation under

Section 1125(c) of this title, shall have been established . . . the plaintiff shall be entitled . . . ,

subject to the principles of equity, to recover . . . (3) the costs of the action . . . .  The court in

exceptional cases may award reasonable attorney fees to the prevailing party."  "Exceptional

cases" are cases in which the infringing party acts in a "malicious, fraudulent, deliberate, or

willful manner."  *Chanel*, 2009 WL 2496586, at *9 (citing *Groundworks of Palm Beach Cnty.,

Inc. v. Groundworks, Inc.*, No. 6:06-cv-1905-Orl-31DAB, 2008 WL 345587, at *3 (M.D. Fla. Feb.

6, 2008)).

      In addition to the allegations of the amended complaint, WFTV has also submitted a

declaration from WFTV's General Manager, Shawn Bartelt.  Doc. No. 23.  Bartelt's declaration

---

[17]This reference is to the pagination assigned when the document was electronically filed.

shows that WFTV sent Defendants two cease-and-desist letters prior to commencing this litigation, but that Defendants continued their infringement of WFTV's trademarks. *Id.* ¶¶ 10-11; Doc. No. 23-4. Thus, WFTV has established that Defendants acted in a deliberate and willful manner in continuing the infringing of WFTV's protected marks even after WFTV complained about the infringement. *Chanel*, 2009 WL 2496586, at *9 (willful manner established where defendant continued to infringe on marks after receipt of two cease-and-desist letters). Accordingly, I recommend that the Court find that an award of attorneys' fees is appropriate in this case.

   I address the specifics of WFTV's fee request below.

       *a. Hourly Rates.*

   WFTV requests an award of $19,358.75 in attorneys' fees. Doc. No. 22 ¶ 2. It submitted the declaration of Attorney James B. Lake in support of this request. Doc. No. 22. Lake avers that three (3) attorneys, one law clerk, and one paralegal performed work on this case with respect to which WFTV has incurred fees. Lake avers that he is a partner in his firm and graduated from law school in 1994. *Id.* ¶ 4. A review of the website of the Florida Bar shows that Lake has been admitted to practice law in Florida since 1994. *See* The Florida Bar, found online at http://www.floridabar.org/names.nsf/0/65C19FBF1990F04C85256A82007FB67D? OpenDocument (last visited April 18, 2013). WFTV requests an hourly rate of $289.00 for Mr. Lake's work. *Id.* ¶ 2. In the absence of objection, I recommend that the Court find that $289.00 is a reasonable hourly rate in the central Florida market for an attorney of Lake's experience.

   Lake also avers that James J. McGuire is a partner of his firm office and graduated from law school in 1993. Doc. No. 22 ¶ 5. A review of the website of the Florida Bar shows that

McGuire has been admitted to practice in Florida since 1999.  *See* The Florida Bar, found online

at http://www.floridabar.org/names.nsf/0/B7127831758F9BAA85256A83004477D9?

OpenDocument (last visited April 18, 2013).  WFTV requests an hourly rate of $289.00 for

McGuire's work.  *Id.* ¶ 2.  In the absence of objection, I  recommend that the Court find that

$289.00 is a reasonable hourly rate in the central Florida market for an attorney of McGuire's

experience.

Lake also avers that Deanna Shullman is a partner of her law firm and graduated from law

school in 2001.  Doc. No. 22 ¶ 6.  A review of the website of the Florida Bar shows that Shullman

has been admitted to practice in Florida since 2001.  *Found online* at http://www.floridabar.org/

names.nsf/0/2293B221BA983FBE85256AE6004CBF05?OpenDocument (last visited April 18,

2013).  WFTV requests an hourly rate of $259.25 for Shullman's work.  *Id.* ¶ 2.  In the absence of

objection, I recommend that the Court find that $259.25 is a reasonable hourly rate in the central

Florida market for an attorney of Shullman's experience.

WFTV also seeks to recover $144.30 per hour for the services of paralegal Karen Lee

Grubb.[18]  Doc. No. 22 ¶ 2.  Lake's declaration describes Grubb as an "experienced paralegal."

She has a master's degree in journalism.  *Id.* ¶¶ 2, 8.  In the declaration Grubb filed regarding the

ownership of the www.insidecentralfloridashow.com domain name, she states that she has been a

paralegal for sixteen (16) years.  Doc. No. 35 ¶ 2.  Absent evidence that $144.30 per hour is a

reasonable hourly rate for a paralegal in the Central Florida market, and based on my familiarity

with hour rates awarded to experienced paralegals in other cases, I recommend that the Court find

---

[18]  Grubb was referred to as "Karen Lee" in the original motion for default judgment and supporting documents.

that the reasonable hourly rate for Grubb is $95.00 per hour, which is a reasonable hourly rate for an experienced paralegal in the central Florida market.  *See, e.g., Gray v.  Novell, Inc.*, No.  8:06-CV-1950-T-33TGW, 2012 WL 3871872, at * 11 (M.D. Fla. Sept. 6, 2012) (finding $95.00 per hour reasonable for a paralegal in a complex intellectual property case).

Finally, WFTV seeks to recover $127.50 per hour for the services of Sadie Craig.  *Id.* ¶ 2.  At the time she performed work on this lawsuit, Craig was a law clerk.  *Id.* ¶ 7.  WFTV cites to no evidence or caselaw to support an hourly rate of $127.50 for a law clerk.  Accordingly, I recommend that the Court find that the requested hourly rate for Ms. Craig is not reasonable.  Courts in the Middle District of Florida have found $100.00 to be a reasonably hourly rate for a law clerk.  *See, e.g., Power-Sonic Corp. v. Filho*, No. 6:11-cv-1659-Orl-36KRS, 2012 WL 5949011, at * 2 (M.D. Fla. Oct. 19, 2012), *adopted*, 2012 WL 5948381 (M.D. Fla. Nov. 28, 2012).  Therefore, I recommend that the Court find that $100.00 is a reasonable hourly rate for Craig's work in the absence of objection.

    *b.*  *Hours of Work*.

The hours worked by the various professionals, as detailed in the time sheet (Doc.  No. 22-1) reflect that all of the hours worked were reasonable in the absence of objection except for the

following work performed by Paralegal Grubb:

| Date | Hours | Narrative |
|------|-------|-----------|
| 11/09/11 | 0.8 | Organize e-mails forwarded by client in chronological order to determine the time frame of contents. |
| 02/29/12 | 0.1 | Brief conference with J. Lake re foreclosure case against Aldridge and obtaining copies of pleadings from case. |
| **TOTAL** | **0.9** | |

Doc. No. 22-1 at 1-3.  Such purely clerical or administrative work is generally not compensable.

*See, e.g.*, *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000);

*Reyes v. Falling Star Enterps., Inc.*, No. 6:04-cv-1648-Orl-KRS, 2006 WL 2927553, at *5 & n.2

(M.D. Fla., Oct. 122, 2006); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) ("Of

course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of

who performs them.").   Accordingly, WFTV's requested fees for paralegal time should be

reduced by 0.9 hours.  After this reduction, I recommend that the Court find that WFTV is entitled

to recover a total of 6.9 hours for paralegal time worked by Ms. Grubb.

c.      *Lodestar*.

Accordingly, the lodestar attorneys' fees in this case are as follows:

| Name | Hourly Rate | Hours | Total |
|---|---|---|---|
| James B. Lake | $289.00 | 40.6 | $11,733.40 |
| James J. McGuire | $289.00 | 6.5 | $1,878.50 |
| Deanna K. Shullman | $259.25 | 17.0 | $4,407.25 |
| Sadie Craig | $100.00 | 3.0 | $300.00 |
| Karen Lee Grubb | $95.00 | 6.9 | $655.50 |
| **TOTAL** | | | **$18,974.65** |

6.    Costs.

WFTV also seeks to recover $1,407.50 in costs pursuant to Federal Rule of Civil

Procedure 54(d)(1).  Doc. No. 30 at 21.  This amount consists of the Court's filing fee ($350.00),

the Secretary of State's fee for accepting substitute service ($17.50), $210.00 for Process Xpress's

attempts to serve Defendants, and $830.00 for Charles A. Salemme & Associates's ultimately

unsuccessful investigation to locate and serve Defendants, which WFTV characterizes as "process

server fees."  *Id.*; Doc. No. 22 ¶ 9; Doc. No. 22-1; Doc. No. 22-2.

The $350.00 Court filing fee is taxable as a cost.  28 U.S.C. § 1920(1).  Costs for private

service of process are recoverable to the extent they do not exceed the statutory fees that the

United States Marshals Service may collect pursuant to 28 U.S.C. § 1921.  28 U.S.C. §§ 1920(1),

1921; *EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000).   The current statutorily

authorized fees for 28 U.S.C. § 1921 is set forth in 28 C.F.R. § 0.114, which provides that the U.S.

Marshals Service  may collect $55.00 per hour for service of process, plus travel costs and any

other out-of-pocket expenses.  28 C.F.R. § 0.114(a)(3); *see also Powell v. The Home Depot,*

-34-

*U.S.A., Inc.*, No. 07-80435-CIV, 2010 WL 4116488, at *4 (S.D. Fla. Sept. 14, 2010) (citing, *inter alia*, *Padjuran v. Aventura Limousine & Transp. Serv., Inc.*, No. 08-20128-Civ, 2009 WL 4633526, at *20 n. 11 (S.D. Fla. Dec. 2, 2009) (noting that the rate under 28 C.F.R. § 0.114 increased to $55 per hour on Dec. 18, 2009))).  Travel costs, including mileage, are calculated according to 5 U.S.C. Ch. 57.  In late 2011 and early 2012, when WFTV's process servers were attempting to serve Defendants, the applicable mileage reimbursement rate was 51 cents per mile.[19]  "Out-of-pocket expenses" include "advertising, inventorying, storage, moving, insurance, guard hire, prisoner transportation and housing, and any other third-party expenditure incurred in executing process."  28 C.F.R. § 0.114(b).

WFTV seeks recovery for three (3) service-related expenses.  First, it seeks $210.00 for Process Xpress's attempts to serve Defendants.  Doc. No. 22 ¶ 9; Doc. No. 22-2.  WFTV has submitted invoices from Process Xpress showing that Process Xpress attempted to serve Defendants on at least six (6) different dates.  Doc. No. 22-2.  Assuming that each service attempted required at least one hour and absent any objection from Defendants, I find that the $210.00 actually incurred by Process Xpress is less than the rate charged by the U.S. Marshals Service and, therefore, allowable under 28 U.S.C. §§ 1920(1) and 1921.

Second, WFTV seeks recovery for the $17.50 fee charged by the Secretary of State for accepting substitute service.  Doc. No. 22 ¶ 9.  In the absence of objection from Defendants, I find

---

[19]The rate for calendar year 2011 was 51 cents per mile.  *See* Federal Travel Regulation Bulletin 11-03, *available at* http://www.gsa.gov/graphics/ogp/FTRBulletin11-03.pdf (last visited April 18, 2013).  The initial rate for calendar year 2012 remained 51 cents per mile.  *See* Federal Travel Regulation Bulletin 12-01, *available at* http://www.gsa.gov/graphics/ogp/FTR_Bulletin_12-02.pdf (last visited April 18, 2013).  The rate was raised to 55.5 cents per mile effective in April 2012.  *See* Federal Travel Regulation Bulletin 12-06, *available at* http://www.gsa.gov/graphics/ogp/FTR_12_06_FedReg.pdf (last visited April 18, 2013).

that the $17.50 requested is less than the rate charged by the U.S. Marshals Service for a successful service attempt and is, therefore, allowable under 28 U.S.C. §§ 1920(1) and 1921.

Finally, WFTV seeks recovery for $830.00 incurred by Charles A. Salemme & Associates. The invoice submitted by WFTV describes the services provided as "INVESTIGATION TO LOCATE JONATHAN ALDRIDGE."  It includes 8.00 "Investigative Hours" at $75.00 per hour, a charge for 300 miles at 60 cents per mile, and a $50.00 charge for two (2) "Comprehensive Reports."  Doc. No. 22-2.  There is evidence in the record indicating that Charles A. Salemme is a licensed process server and that he made significant efforts to attempt to serve Defendants in this case.  Doc. No. 16-4.  Accordingly, and in the absence of objection from Defendants, I recommend that the Court treat the expenses incurred by Salemme & Associates as recoverable private process serving costs, as requested by WFTV.  I also recommend that the Court tax these costs at the rates charged by the U.S. Marshals pursuant to 28 C.F.R. § 0.114, in accordance with the limits authorized by 28 U.S.C. §§ 1920(1) and 1921.  Accordingly, I recommend that the Court reduce WFTV's requested costs for expenses incurred by Salemme & Associates to $440.00 for investigative hours (8 investigative hours at a rate of $55.00 per hour) and $153.00 for mileage (300 miles at 51 cents per mile), for a total of $593.00.  There is insufficient information to determine the purpose of the "Comprehensive Reports" referenced in the invoice or whether they were necessary to effect service of process in this case.  Accordingly, I recommend that the Court disallow this requested cost.

In sum, I recommend that the Court award taxable costs in the total amount of $1,170.50.[20]

---

[20]  This figure is calculated as follows: $350 (filing fee) + $210 (Process Xpress service of process costs) + $17.50 (Secretary of State fee) + $593.00 (Charles A. Salemme & Associates service of process costs)=$1,170.50.

## V.   RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court:

(1)   **GRANT in part and DENY in part** WFTV's motion for default judgment;

(2)   **FIND** Maverik and Aldridge liable for violations of 15 U.S.C. § 1114(1)(a), as alleged in Count I of WFTV's amended complaint;

(3)   **FIND** Maverik and Aldridge liable for violations of 15 U.S.C. § 1125(a), as alleged in Count II of WFTV's amended complaint, but only insofar as Count II refers to WFTV's Federally Registered Marks;

(4)   **FIND** Aldridge liable for violations of 15 U.S.C. § 1125(d), as alleged in Count III of WFTV's amended complaint;

(5)   **FIND** Maverik and Aldridge liable for common law trademark infringement of WFTV's Federally Registered Marks, as alleged in Count IV of WFTV's amended complaint;

(6)   **FIND**  Maverik and Aldridge liable for violations of Florida Statutes § 501.24 as alleged in Count V of WFTV's amended complaint, but only insofar as Count V refers to WFTV's Federally Registered Marks;

(7)   **ASSESS** statutory damages of $20,000.00 against Aldridge;

(8)   **ASSESS** attorneys' fees of $18,974.65 against Maverik and Aldridge, jointly and severally;

(9)   **ASSESS** costs of $1,170.50 against Maverik and Aldridge, jointly and severally;

(10)   **GRANT in part** WFTV's request for destruction of materials and order Defendants, within five (5) business days of service on Defendants of the Court's Order on this Report and Recommendation, to recall and deliver up and destroy, at their expense, all videos, stationery, business forms, signs, advertisements, brochures, promotional materials and other written materials bearing the name "Inside Central Florida Show," the domain name www.insidecentralfloridashow.com, or any name or mark confusingly similar to INSIDE CENTRAL FLORIDA® or ICFLORIDA.COM®;

(11)   **GRANT** WFTV's request for transfer of the www.insidecentralfloridashow.com domain name and order Defendants and their domain registrar, Network Solutions, Inc., to transfer the www.insidecentralfloridashow.com domain to WFTV;

(12)     **ENTER** a permanent injunction in a form approved by the Court; and

(13)     **DIRECT** the Clerk of Court to enter a judgment consistent with the Court's order on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 19, 2013.

                                        *Karla R. Spaulding*
                                        KARLA R. SPAULDING
                                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy